Our second case is 24-1293, Moshoures v. City of North Myrtle Beach. Mr. McPhail? Oh, I'm sorry. That's okay. Please wrap. Good morning, and may it please the Court. My name is Meredith McPhail, and I'm here on behalf of Appellant. For at least half a century, the First Amendment has protected offensive speech. Despite that principle, the City of North Myrtle Beach in 2021 decided that it had a problem with offensive music. And even though there was already a generally applicable noise ordinance, the City passed another stricter set of volume limitations on three categories of speech it didn't like – profane noise, vulgar noise, and obscene noise. The ordinance included definitions for each category, with the obscene noise being defined modeled after the Supreme Court's definition of obscenity in Miller. Plaintiff who owns a bar in North Myrtle Beach sued under the First and Fourteenth Amendments, and the question before the Court today is whether the vulgarity provision, which imposes stricter volume limits on noise that makes explicit and offensive reference to sex, male genitalia, female genitalia, or bodily functions, violates the First Amendment. Because the vulgarity provision reaches protected speech, cannot survive strict scrutiny, and is overbroad, it must be enjoined. I welcome the Court's questions. And is that, notwithstanding the fact that the District Court judges seem to think that vulgarity was subsumed within the broader definition of obscenity, if that read literally that would suggest that your client would suffer no indignity or harm by assuming that town officials were faithful to that application, right? So what's – why are we here? Yes, sir. The crux of the issue is chill, which as a matter of constitutional law is a serious harm suffered by both plaintiffs and others in North Myrtle Beach. So for example, when a resident of North Myrtle Beach looks to the ordinance, the textual definition of vulgar includes a broad swath of material that would not be obscene and is protected by the First Amendment. And this is critical in the context of this ordinance, which was passed explicitly to quiet offensive music, which necessarily has artistic value. And the core concern here is that folks are not going to even come close to the line of they think is vulgar for fear not only of a fine, but also of jail time, which is a possibility under this ordinance. Is the right way of thinking about this a question of whether given sort of the potential need for constitutional avoidance, the vulgarity provision could plausibly be read, however language we want to use there for avoidance, but whether it could plausibly be read in such a way? Do you agree that's the right inquiry that we're asking? I think that that's part of it. I think that's part of the inquiry we're looking at. So help me understand, like what's, help me assume for a minute that that's, I thought you'd probably agree, but assume for a minute that is the sort of inquiry that we're asking. We look at this sort of vulgarity provision, and I totally take that you could read it to be distinct and broader than obscenity. But at least there's, maybe there are arguments that it could be narrowed, right? We could look at the sort of context in order to avoid this sort of constitutional problems that might arise. We could think about the sort of explicit and offensive as sort of incorporating some of the pieces that we think might be missing from the Miller test. Help me understand why I shouldn't do that, right? I mean, we don't run around sort of chopping things up, right? We're trying to, you know, give the benefit of the doubt here. And yes, it's a little bit different, but tell me why I shouldn't take that approach. Sure. I think there's two responses to that. And the first is that constitutional avoidance just does not permit a court to rewrite a  And that points to the second question, which is that this particular statute cannot be interpreted in a natural way that does not functionally rewrite it. And the core of that kind of requires the court to look at the specifics of Miller. And I think the most- Well, isn't the core of it is it requires us to read vulgar and offense? There's a statute that says profane, vulgar, or obscene. Profane was enjoined is just gone, but the statute as originally written says profane, vulgar, and obscene. And one of the first principles of statutory interpretation, if it says X, Y, or Z, it's that each one of those has some amount of content that is not covered by each of the  And under that interpretation, Y and Z would mean exactly the same thing. Yes, yes. That's certainly one reason that constitutional avoidance is not applicable here. And I think when we- I guess another way to say it, to the extent that vulgar does literally anything at all, it is to grab some speech that is not obscene because otherwise vulgar adds nothing to the statute. That's exactly right. And I think that that kind of gets to the core of Judge Diaz's question about why we're here, right? Why does the plaintiff care about vulgar's inclusion? And why does the city of North Myrtle Beach care about the ordinance inclusion of vulgar? And that gets to the core of what underlay this ordinance to begin with, which is offensive music. And if vulgar captures, as it must, protected speech, it serves only to chill that speech. But why is that going to matter here, right? Because the district court can enjoin its enforcement, but the chill, you say, comes from them reading it, right? And what we don't get a chance to do, right, is excise statute books or ordinances, right? So North Myrtle Beach can leave that on the books as long as they like. We're, at least in this posture, not going to do anything about that. And so that seems to be the same problem, right? So we're relying on people to be informed, for example, on the profanity piece, right? That remains on the books, I presume, in North Myrtle Beach. And yet there's a court order, so we sort of have this fiction that people are reading our court orders, and so they understand that they can play profane music. Why wouldn't we do the same thing with respect to the vulgarity that says, yeah, if you read the words, profane is still in there, right? So too is vulgar, but, you know, we have this fiction that they've read the district court's order and they understand that, you know, profane's no longer any good, even though it's still there, and that vulgarity is effectively not there either because it's the same thing as obscenity. Yeah, I think that there's independent value in the court saying that, right? And that also sending a message to...  But it said that, right? So the district court said, hey, when you see, I mean, if you read the opinion, when you see the word vulgarity, like, just in your mind, scratch it out and write obscenity. So it says now you cannot play obscenity, obscenity, obscenity and obscenity in these sorts of ways. And like, all right, I get we wouldn't actually write a statute that way, but, you know, we're doing the best we can with the tools we have. Yeah, I think that doesn't seem like a crazy thing to sort of give credit to the district court for having done. Sure. I think that certainly limiting vulgar to obscenity only puts us in a better place than we were before that. But I think it still doesn't necessarily solve kind of the core problem that Your Honor is getting at, which is if it's still on the books, what's the what's the point? And I think that... That's still the same problem with profane, right? So profane is still on the books. We just think it doesn't chill people because they're going to have read Judge Dawson's  Right. And, you know, vulgarity is going to still be on the books. But we ought not to think that it's going to chill anybody because they've read Judge Dawson's order. And I get it's a fiction that they're reading Judge Dawson's order. But like, it's a fiction that we abide by, right? Can Judge Dawson make an authoritative construction of what state law means? Yes. That's binding on the South Carolina courts? Well, certainly it would be binding in the specific... Because I presume any actual enforcement action is going to be brought in state court, right? Yes. And, of course, that actually tees up the profane problem. Well, no, if he can enjoin... Yeah. So, right. I guess one thought I just had is if someone calls up the city of Myrtle Beach now and says someone's playing profane, I've read the statute, this hypothetical officious citizen who reads the statute, I've read the statute. I think what they're doing is profane. They're like, yeah, so there's a court order saying we can't actually enforce that. And then you call up and say vulgar. It's like, well, good news, bad news, citizen, we can enforce the word vulgar, but vulgar doesn't mean now what the statute says vulgar means. Vulgar means something else. That's one difference, right? I suppose. Yes, that the court's order did specifically say profane is invalid, but kind of construed vulgar, the vulgarity provision in a less definitive way necessarily based on the reading. But I think like if we zoom way out, what is the core of what's happening here is that the city of North Myrtle Beach is trying to quiet offensive music and that's just constitutionally fundamentally problematic. So, would your answer be different here? Take the hypothetical where there are two plausible readings of vulgarity and one of them could be obscene and one of them would stretch just a little bit beyond it. It's a different definition than what we have here, maybe, but just accept that. In that instance, we would accept the district court's order, right, as sort of having solved this problem. I mean, that's the oddity that I'm having, right? There's, I don't think it's like constitutionally moot, but like there's a sense in which there's no additional chilling that's taking place if we accept what the district court has done. I think to Judge Hyten's point, there is some potential additional chill even were someone to go, you know, kind of read the order. But the fact that... I mean, I understand that. I mean, I, you know, I take maybe in the phone call it seems awkward, but it's like not a whole lot different, right? To say in one, we can't enforce this one and in this one we can enforce this one only so far as it's obscene. I don't know. Those seem like reasonable things that a city official could say. Sure. I think just in terms of the statutory interpretation and South Carolina's rules of statutory interpretation as applied to the ordinance, there is a strong rule against surplusage, which would say that to the degree that vulgarity and obscenity mean the same thing, that's just not how we can read the ordinance. Because the city's argument functionally is we wanted to stop obscene noise, and so we put that in the ordinance. And then we wanted to stop obscene noise again, and so we put another word into the ordinance. But under the rules of statutory interpretation in South Carolina, that's just not permissible. I mean, it's not permissible, but it, I mean, we have surplusage all the time, right? It's like a rule of thumb. It's not a prohibition, right? It's certainly not an explicit prohibition, but I think this is a, you know, relatively black and white case where the city is saying that we have two different terms that functionally overlap. So if we're looking at the Venn diagram under the city- But I thought, and then I want to go to the chief. Sorry, I didn't mean to interrupt you. But we think about the rule of surplusage as like a canon that helps us understand what the legislative body was doing, right? And so, because it's like a sense that the legislature wouldn't say obscenity and obscenity. But it's odd to apply that in a context when we're rewriting, in essence, the statute, right? So it's not, I don't have any doubt that the legislature here intended vulgarity to cover something other than obscenity, right? That's totally fair. But what we were doing here is by constitutional avoidance, at least in theory, adopting a plausible reading that does create surplusage, but it doesn't violate the canon because the canon is about understanding the legislature. We've sort of like butchered the statute. That's our fault or, you know, the court's fault. Certainly I think, you know, when we look at just what's happening on the ground and why we're here fundamentally, it's that the city of North Myrtle Beach said we don't want offensive music going on. So we actually know exactly what the intent of the legislature was in the city of North Myrtle Beach, and it was to quiet protected speech. I mean, there's statements by city officials to that effect that said we have heard that citizens are upset about offensive music and we're going to see what we can do about it. And this is what they did about it. But we don't look at sort of subjective belief in applying constitutional avoidance, right? Sure. So Judge Richardson mentioned the fact that we're here simply to decide the issue before us. We can't blue pencil the ordinance, you know, that kind of stuff because it's not that's not the issue before us. But you represent an organization that's not no stranger to these types of issues. What's been your experience with respect to cases where the court does decide that some or all of a portion of an ordinance is unconstitutional? What is how does a municipality typically respond to that? Sure. Well, certainly I'm here on behalf of the plaintiff who is the owner of the city or owner of a bar in the city of North Myrtle Beach. But oftentimes what a city or municipality will do will be to change the ordinance to be in compliance with the Constitution. I think that would be the ideal outcome in this case. And I think a strong ruling from this court would certainly move us toward that resolution. Can I ask a different question maybe? And I'll let you sit down. So if if we agreed with you that the district court adopted a wholly implausible reading of the statute in order to avoid the constitutional question and that was an error. Why do you think we should go beyond that and address the the scrutiny question sort of the evidentiary questions? I mean, I know you all briefed all of this and I appreciate it. I'm not trying to knock that. But it's a little unusual because if we agreed with you at step one, then we would be doing as an initial matter sort of this evidentiary question about what is the government's interest? Is it substantial? How much evidence that they provided? We've got this whole line of cases about what's evidence in the legislative record about the consideration or attempts to use alternatives that comes out of PETA might not be right, but it seems like a rule that we have that seems really evidentiary to me. Tell me why we should go that step instead of if we agree with you, vacate that part of the order and remand for further consideration. Certainly. So the district court did do that kind of evidentiary work on the profanity provision and the city has not articulated any reason why the vulgarity provision would have a different compelling interest or should be differently narrowly tailored. And so I think the district court's ruling on profanity, which the same justifications were given, the same ordinance applies, would largely apply, wholly apply, to the vulgarity provision in this case. Thank you, Ms. McPhail. Mr. Manos. Thank you, Chief Judge, Your Honors. May it please the court, Marcus Manos, Maynard Nexon, for the appellee's city of North Myrtle Beach and its police chief. The purpose of an ordinance or statute of any type is to give notice to persons of what's illegal. The Miller definition of obscenities in the first section, frankly, is a difficult thing to  Vulgarity, as it's been applied by the FCC and many other federal courts, is a stand-in that helps people understand- Whoa, whoa, whoa, no it's not. Vulgarity is applied by the FCC. It is common ground. It goes way beyond things that are legally obscene. There's all kinds of things that are vulgar, as the FCC uses the term, that are not obscene legally. Yes, Your Honor. Okay. But as defined in this ordinance, explicit, offensive, sexual acts, not nudity, not other things, bodily functions, and genitalia. It fits in as the district court discernment- And it obviously doesn't because there's no carve out for things with serious artistic literary value. Let me give you what, here's my obvious example. There is a recent song by Cardi B and Megan Thee Stallion that strikes me as transparently vulgar under this statute and obviously not obscene under Miller. It strikes me as blindingly obvious, both of these things. That song is obviously vulgar, as this defines vulgar, and it's obviously not legally obscene. And if you wanted to say- Can we just make the second part of that hypothetical? I'm not going to accept that it's not obscene. Okay, fine, fine. Every single thing that, every single song that 2 Live Crew ever produced was vulgar under this ordinance, but it's not legally obscene as held by the 11th circuit in the case where someone tried to prosecute those guys for obscenity. So it seems obvious that vulgar to me is broader than obscenity if for no other reason than that obscenity, like Miller, has a carve out for things that have serious artistic literary or other value. And the definition of vulgar does not. Your Honor is correct. It is not explicitly stated in the definition of vulgar. The application of the statute would be consistent with Miller because of the ruling of the district court. But you don't- You're not here on a cross appeal, so you don't necessarily, what's your position? Do you think Judge Dawson got that right? Your Honor, we believe he did, but we also believe that vulgarity in this context- Means something more? Could withstand a challenge on its own.  This is a broadcast, not just of music, but of any line. It is set in such a way only to prevent it from going into the public right of way and into areas that are adjacent to it. How is that any different from the jacket in Cohen? That was a guy walking around a public courthouse wearing a jacket that had, you know, the words that it had on it. That was in a public place and the defendant in Cohen said there might be some children or some vulnerable women and children because this was the 60s and they might have said something like that in that opinion. But my point is the court was like, yeah, that could happen. Don't go in public courthouse if you are really so concerned about never seeing a jacket that says the F of the draft, don't go into a courthouse. That's what you've got to do. Partially, Your Honor, as the Supreme Court pointed out in Hustler, even vulgar speech is not entitled to complete protection in certain circumstances. Here, there's no political context, which makes a big difference with Cohen when you think about F the draft. The whole idea behind that was there was a political message that was being given about whether the country should be involved in war, about whether people should be made to participate in those wars. But under this definition of vulgarity, that doesn't matter even a little bit because the fact that that was an anti-war message would make no difference under this ordinance's definition of vulgarity. The time and place and the context, Your Honor, here— I thought your answer to that would have to be—I'm not sure it's a good answer, but I thought your answer to that would have to be that's because it wouldn't fall within the offensive qualifier, right? That political speech is, by definition, not offensive speech, right? That we live in a world where if you're engaging in debate about the ideas and even in saying F the draft, I mean, that's a debate about the ideas, that that could not be offensive, right? Otherwise, I don't understand your argument at all. So is that—I mean, is that the point that we've got to read offensive to, in some sense, sort of adopt this, you know, lacks any serious merit line? Your Honor, it adopts the contemporary standard of offensive by its nature, by using the word, and that's correct. Political debate is accepted today throughout, even in the city of North Myrtle Beach in South Carolina, to include things that would otherwise disturb us. But it's about politics. It's about something— I get that for the politics. The problem is it seems like to me offensive is also—like, I think offensive probably solves the politics problem for you, or at least could solve the politics problem for you. What it doesn't solve is the things that are offensive that address bodily functions that are not sexual, right? And we can think about what those are, but we can imagine things that are explicit and offensive involving bodily functions that are not sexual. And those strike me as the category that most obviously is vulgar, but not obscene. Your Honor, I think if you look at the line of cases for Pacifica, and admittedly, as Judge Heintz has pointed out, when you start dealing with the FCC, there's something different. You're talking about broadcasts of speech— Into people's houses, and the whole theory of those cases is you can't really avoid them, and maybe you can't—like, I was just about to ask you, so I'm going to tell you in advance I'm not going to find a persuasive case that's about the FCC. What is your best case for the proposition that the government has an interest in protecting children from non-obscene but age-inappropriate material, not in their own homes, not in school, when they are out in the world in public? What case says the government has an interest in protecting children from vulgar but non-obscene speech when they're out in public, not in their homes, not in schools? Your Honor, that would go back to 1949 with Kovacs, where actually the Supreme Court stated then that the broadcast into the public right-of-ways, not for something that was a political meeting, not for something that was otherwise protected, of matters that were vulgar and objectionable with children who may or may not be accompanied by their parents. Would you agree that we've made a lot of First Amendment law since 1949 in this country? Yes, sir, but that one has not been overruled. Well, there's like Cohen, for example. It's not clear to me how you can square that with Cohen. I understand, but it hasn't been overruled. It hasn't been rejected. It's still there. And that idea is that that type of broadcast, where children are going to be on a typical and this is an understanding to the FCC cases are not persuasive to your Honor. However, Pacific itself just said it's two o'clock in the afternoon. Kids could be listening. And that's not just necessarily in their homes. That's broadcast on car radios. That's broadcast elsewhere. But you're making an argument that rejects just Judge Dawson's interpretation of the ordinance, right? Because read literally, he said you're only going to be able to enforce the vulgarity provision if it's fully subsumed within the definition of obscenity, right? So you seem to be making a distinction that Judge Dawson rejected. Yeah, it's been rejected. We haven't appealed it. That's the way it's going to be handled going forward. Wait, as I understand, you made two arguments. One, if Judge Dawson's right about the statute, then we all go home. That's right. Right, Your Honor. But if Judge Dawson was wrong about the statute, then you think you can justify it under scrutiny? There's an additional sustaining ground. Right. Yes. And why I asked your colleague this, if I thought that you can't read the statute, even considering avoidance to equate it to obscenity, so if I believe the district court erred in that regard, why should we not go ahead and address the scrutiny issue here? Neither of you asked to be remanded to the district court. That seems a little odd, given that this is sort of such an evidentiary-based issue. But can you help me understand why, if we reject the statutory interpretation, we should plow ahead and weigh the evidence and make our own judgments about strict scrutiny? Your Honor, we read our brief as actually giving up on the strict scrutiny point, that if it is going to be analyzed from that position, it will have to be strict scrutiny. But under Judge Dawson's rule— It will have to be strict scrutiny, or it will be— Fail strict scrutiny. I mean, you make— No, no, it would have to be analyzed under that level. Right. But it would succeed. But it would succeed, right. And so the question is, if I assume for a minute that I decide that strict scrutiny applies to vulgarity, because vulgarity covers things beyond obscenity, all right, if that were true, do you think we should address strict scrutiny? That means the appellate court? Or do you think it should go back to the district court, for the district court to evaluate the arguments that you're making? Right. If the appellate court feels there's sufficient material on the record, with the public commentary on what was being heard, with the decibel levels and how it is restricted to allow him to do so within his own premises, even though it's outdoors, so that those lyrics can be clearly heard, that scientific evidence is in the joint appendix 34 to 38, but not to be heard on the street, then certainly this court could proceed. But more routinely, yes, it would be sent back to the district court for further factual findings. So we could do that, but we could also send— Your view is either of those are fine? Yes, Your Honor. If we got to the point. Go ahead. No, mine's a completely different question. Mine is too. So can I just ask the elephant in the room question? If this is really about people's quiet— I mean, it's like you have a whole series— So you have a couple of rationales. Actually, to make sure I've got this right, you have the quiet enjoyment rationale, right? Broadly speaking, we'll call it the quiet enjoy— That's one rationale you put forward, right? Yes, Your Honor. There's the protecting the children rationale. Yes, Your Honor. Are those the two? Is there anything else I'm missing? The quiet enjoyment actually falls under the captive audience that you see in the COEX case. Okay, but the problem— Okay, so let's start with the quiet enjoyment problem that strikes me as just the fatal ballgame problem, if that's the rationale. I can blast Vanessa Carlton, or Miley Cyrus, or Jimmy Buffett, or Bob Marley as loud as I want to. And that— Or Metallica, as loud as I want to. And that doesn't violate this ordinance. But if I want to blast a whole bunch of things that are played on pop radio, and certainly on Sirius and Spotify, I can't. This law draws distinctions that seem to make no sense with regard to a quiet enjoyment rationale. It is so obviously over and under inclusive with regard to that. So what is the response to that? I'm sorry, Your Honor. The quiet enjoyment rationale is actually to the general joys ordinance, which is severable. Okay, okay. So in other words, this particular law can't be— Because it's obvious that if you just want to, like, let people get on with their day without being, like, blasted with music, the solution is simple. It's a decibel limitation on amplified sound, right? Correct. And this one's also a decibel limitation. Yeah, but it's a decibel limitation that only applies to some kinds of sounds. That's correct, Your Honor. And you had asked me earlier what's one of the best cases we have that's not an FCC case. It's Shea v. Reno. Okay. Out of the Southern District of New York. That was the Computer Decency Act, which said using the term vulgar actually has an understood meaning. It's not vague. People know what it is. It is a way to restrain something. It actually ended up finding a statute overbroad, but on the basis that it controlled adult-to-adult communication. So it didn't find it on the basis that the word vulgar was used. It says, historically, you could look at all the different cases that are out there and you can find a definition for it. And that definition is a level of patently offensive, offensive, explicit. And in this case, it's a captive audience rather than a client and joint. How is it a captive audience? I mean, what case, I mean, maybe Kovacs, but other than Kovacs, what case buys this idea that people walking along at a public street are a captive audience? Captive audiences, like it comes into my house or I'm forced to listen to it at school. It just seems deeply strange to allow you, to allow a municipality to define its own streets as a captive audience. Kovacs said that on the basis that is true here. There are certain routes. This is a vacation town. You know, at the timing of the day, you're going to have children and people heading to the beach, the ice cream shop that's next door, competing businesses located nearby were among those who complained. If you look at the joint appendix in between 44 and 57, because of the effect it had on people who had to take the street to get to where they needed to go. It's in theory, Your Honor, of course, one could find out from someone else that this establishment exists and broadcast this music and you could take your GPS and you could take a route and you could walk your children and go several blocks around and get to the ice cream shop this way. Unless, of course, it's one of the businesses next door, which can't protect itself from it. And you're a captive audience if you wish to do business there. But so is anybody who wants to go to the courthouse. Again, Your Honor, I think the difference there is the political message and a courthouse is a place of government, an actual place of government. You're almost looking at a special public forum in an instance like that, which of course is not what this case is about. And it's not a political parade or anything else we're talking about being able to blast this kind of music in. But it's an inherent difference when it's the only way you can get, it's the way to the beach, it's the way elsewhere. And the broadcasts were definitely extending up to blocks away from this establishment when you look at the record. Even if this court were to strike down the vulgar, I think one thing to point out is that the code itself at 1278 has a severability provision. And so Judge Dawson's finding hasn't been appealed regarding the obscenity matter, just as it hasn't been appealed regarding the profanity matter. Can I go back to the constitutional avoidance and the reading of the statute? It seems like to me there are three, two moves that really matter here that seem hard. One we talked a little bit about is you got to read offensive here to mean something like lacking serious merit, to get under the sort of Miller obscenity definition. And maybe that's plausible, maybe it's not. But it seems like you also have to read bodily functions to somehow be limited to sexual functions and not non-sexual functions. The back of a car where somebody's got the little Calvin and he's doing something onto a symbol or the like. So that's like a bodily function. We might think of that as offensive, but we certainly wouldn't think of that as being obscene. If I'm trying to avoid the constitutional problem, how would I read bodily functions to be limited to sexual bodily functions? Your Honor, I don't think you'd have to, number one. Okay, well, assume for a minute that I thought I had to. Take it just hypothetically. Imagine that I thought in order for the definition of vulgarity here to be obscenity, that vulgarity had to be limited to sexual functions and not non-sexual bodily functions. Do you think you could read it to have that limitation? Be implicit, and if so, how would I do that without taking the blue pen out? It's using or in its traditional sense of and or. So that it would be inclusive of the proceeding. So it has to have... Sex, male genitalia, female genitalia, or bodily functions? Yes, Your Honor. In essence, the broader term at the end of that list takes on the character of the terms that come before it? Without the use of the common, yes, Your Honor. So in your view, the Calvin bumper sticker is not covered by this? It would not be, Your Honor, because if you read the statute properly that way, yes.  Right, so a fart song, for example, let's assume for a minute it's offensive in some sense. That your view is that would not... We could interpret this statute in a manner to not include such a song because it lacks the sex or genitalia sort of theme. Yes, Your Honor. And also that would fall under offensive as well. It's just under today's contemporary standards, people might not like it very much, might think it's gross, but it doesn't rise to the level of being offensive. Right. Can I ask you the flip side of a question that the chief asked your colleague, which is why do you care? In other words, if you're content to let Judge Dawson's weird atextual reading that says, literally vulgar means nothing other than what obscene means, but you're allowed to enforce obscene, why do you care that we... Why does it matter to you whether we enjoin vulgar or not if you're content to just let vulgar be the same thing as obscene? Because both of them run to the world in which only obscene speech can be prosecuted. The city believes... Unless it's the chill, which is the reason... Your friends on the other side say the reason you care is the chill, which is the First Amendment problem. So what's the reason you care that's not the chill? The city believes it is subsumed on a regular reading within obscenity and frankly, gives a better definition of what obscene conduct is to the typical citizen. Do you have anything else, Mr. Mons? Your Honor, I believe... That covers everything I had. Thank you very much, Your Honor. You're welcome. I have to say, I think my two colleagues are culturally much more sensitive to things. I still don't know what a... Was it a Calvin sticker? Is that what you... We'll have to take that one off. I'll tell you during conference. Yeah. We'll have to take that one offline. I'm confident the colleagues here won't object to including that into the unofficial record. Ms. McPhail, go ahead. Thank you. Yeah, I'd just like to start kind of by addressing again, Judge Richardson's question about, well, if the term vulgar still remains in the ordinance, kind of what's the point here? In the city's argument, they kind of hedged a little bit, but functionally asserted that the vulgarity provision does have some sort of independent value or at least could have some sort of independent value. I think the way he phrased it at the end was it just gives more specific meaning to the broader term of obscene. Is that a problem? Well, I think that it's inaccurate that it gives a more specific reading. It's actually much, much more general. But earlier in the argument, there was some argumentation about why vulgarity could theoretically have sustained challenge. And the inclusion and the continued inclusion of the vulgarity provision is problematic in this case, particularly given the background. Why wouldn't we do this? Why isn't this sort of interpretation like the tangible objects, Yates? Right? So we could read bodily functions. This is maybe the piece I'm most hung up on. We could read bodily functions like we could read tangible objects really broadly. And yet in Yates, the court says like, whatever you want to think of fish in a tangible object. And so maybe we could say the same thing here, the nature of the list that precedes it in helps us inform the scope of bodily functions and sort of add onto that. Like, maybe I think that wouldn't work in a normal case, but then I get to like, put the weight on the side of the scale that says, and I get to avoid a constitutional question if I do so. Why not Yates? Why not like read it that way? Well, I think that, you know, the list is explicit and offensive reference to sex, male genitalia, female genitalia, or bodily functions. And as I take the city's argument, they're saying that sex specifically refers to bodily functions and kind of suggests a more narrow interpretation than what the text itself of the ordinance would suggest. Sort of all three at some level, right? I mean, I get, again, probably not enough if I'm doing this like de novo, but I got a constitutional avoidance sort of overlay that tells me like, can I plausibly read it that way? And, you know, Yates tells me that I can do a lot of work by the nature of what comes before it. I think Yates does stand for that proposition, but I don't think that proposition gets you there here. It's just an implausible reading of vulgarity. And I just don't think that it gets you that far in this particular case on these facts. Well, I guess the thing I'm just still, so I mentioned this about Judge Dawson. If we supply a limiting construction of this statute, is that binding on like literally anyone? Is a federal court's limiting construction of a state statute binding on anyone on earth? Except maybe us, I guess in a future case. I would think that it would certainly be authority in a case where someone was prosecuted under the ordinance, but was asserting a First Amendment defense. They'd have like a good faith defense or something. I mean, I guess I just keep coming back to the South Carolina courts don't have to agree with us what their statutes mean, right? Yes. They could say, with all due respect to Judge Dawson, with all due respect to the Fourth Circuit, that is not what the statute says. What the statute says is blank. Yes, certainly. But of course they would still have to, you know, any statute would still have to comply in any enforcement of any statute. But then we have in some ways, but the whole thing that your lawsuit is trying to avoid, which is a person being prosecuted in state court who has to litigate their First Amendment claim defensively. Exactly. Yes, that's exactly the problem. And fixing it on the back end is just insufficient in this crucial First Amendment area where protected speech has been chilled and in fact was intended to be chilled by the city. Wouldn't that be true in any avoidance case, right? So maybe the point of that is like our federalist system means you got to bring the case here and you got to bring it in state court. If you're really concerned about getting prosecuted for something that's not obscenity, right? But yeah, that would mean that we could never do constitutional avoidance involving a state statute. We couldn't rely on it, right? The First Amendment does provide specific considerations here that wouldn't necessarily be the case in other statutes. You know, the First Amendment analysis requires extra care to avoid this fear that folks will chill themselves. It will censor themselves from protected speech because the core of the issue here isn't, well, what do we do on the back end? What happens when there's an enforcement action? But rather what people won't say at all in the beginning. Thank you, Ms. McPhail. I want to thank both counsel for their fine arguments before us. We'll come down and greet you and take a brief recess and then move on to our final case.
judges: Albert Diaz, Julius N. Richardson, Toby J. Heytens